UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

KEVIN OMAR HARPER,

          Plaintiff,

v.                                                                   Case No. 20-cv-875-pp

MICHAEL GIESE, ANGELA WALLENHAUPT,
LT. GARCIA-MARTINEZ, LT. NICOLE GENZ,
CO FUDGE, CO WASHINGTON, CO JOHNSON,
CO JORDAN, CAPT. KARLA GABOR.
and BRENDA GREENWALD,

          Defendants.

---

**ORDER DENYING PLAINTIFF'S FIRST MOTION TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2), GRANTING SECOND MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 6), DENYING AS MOOT THIRD MOTION TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 9), GRANTING PLAINTIFF'S MOTION TO WAIVE INITIAL PARTIAL FILING FEE (DKT. NO. 10) AND SCREENING COMPLAINT**

---

       Kevin Omar Harper, an inmate at the Green Bay Correctional Institution who is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants violated his rights under federal and state law while he was incarcerated at the Waukesha County Jail. This decision resolves the plaintiff's motions for leave to proceed without prepaying the filing fee, dkt. nos. 2, 6, 9, resolves his motion to waive the initial partial filing fee, dkt. no. 10, and screens his complaint, dkt. no. 1.

**I.    Motions for Leave to Proceed without Prepaying the Filing Fee (Dkt. Nos. 2, 6, 9)**

       The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was a prisoner when he filed his complaint. See 28 U.S.C. §1915(h).

1

The PLRA allows the court to give a prisoner plaintiff the ability to proceed with his case without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the prisoner must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then must pay the balance of the $350 filing fee over time through deductions from his prisoner account. Id.

On June 9, 2020, the plaintiff filed a motion for leave to proceed without prepaying the filing fee. Dkt. No. 2. The motion was dated March 6, 2020—three months prior to the filing date. The clerk's office wrote the plaintiff a letter asking, in part, that the plaintiff submit a current motion. Dkt. No. 4. On June 10, 2020, the court received from the plaintiff a second motion to proceed without prepaying the filing fee. Dkt. No. 6. That same day the court ordered the plaintiff to pay an initial partial filing fee of $1.42. Dkt. No. 7.

Less than a week later, on June 16, 2020, the court received *another* motion for leave to proceed without prepaying the filing fee. Dkt. No. 9. The third motion was nearly identical to the second motion; the only difference was that on the last page, the plaintiff asked the court to waive the initial partial filing fee. Id. at 4. The plaintiff also filed a separate motion asking the court to waive the initial partial filing fee. Dkt. No. 10. The plaintiff explained that he "has no money on [sic] his regular account a measly $1.23 on [sic] his release account." Id. He explains that the DOC takes nearly all his income (which is about $8.00 per month) to satisfy his debts. Id.; see Dkt. No. 10-2. The plaintiff's debts include more than $1,500 he owes to the court for federal filing fees. Dkt. No. 10-2 (showing deductions for four federal filings fees; this

2

Case 2:20-cv-00875-PP-WED   Filed 12/01/20   Page 2 of 19   Document 12

statement does not reflect the amount the plaintiff owes for Case No. 20-cv-493 (E.D. Wis.)).

Under the PLRA, a court may not prohibit a plaintiff "from bringing a civil action . . . for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee." 28 U.S.C. §1915(b)(4). A review of the plaintiff's trust account statements, dkt. nos. 5 and 10-2, confirms that he has neither the assets nor the means to pay an initial partial filing fee. The court will grant the plaintiff's motion to waive the initial partial filing fee, dkt. no. 10, and the plaintiff's second motion for leave to proceed without prepaying the filing fee, dkt. no. 6. The court will deny the first motion for leave to proceed without prepaying the filing fee because it was dated three months before he filed his complaint. Dkt. No. 2. The court will deny as moot the third motion for leave to proceed without prepaying the filing fee because it is redundant to the second motion. Dkt. No. 9. The plaintiff must pay the $350 filing fee over time in the manner explained at the end of this order.

## II.     Screening the Complaint

### A.     Federal Screening Standard

Under the PLRA, the court must screen complaints brought by prisoners seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Federal Rule of Civil Procedure 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B. The Plaintiff's Allegations

The plaintiff's complaint describes a series of incidents that occurred from January through March 2018, while he was incarcerated at the Waukesha County Jail. Dkt. No. 1. He alleges that on several occasions the defendants opened his outgoing mail, confiscated letters and newsletters he wrote about jail conditions/staff and retaliated and/or punished him without due process. Id. The plaintiff explains that the letters and newsletters did not discuss criminal activity, threaten staff or contain contraband; they were allegedly "products of boredom and creativity fictional exaggerated detailed writings criti[c]izing conditions and staff." Id. at ¶34.

The first incident allegedly occurred on January 19, 2018. Id. at ¶9. The plaintiff asserts that he was writing letters in his cell when defendants Lt. Genz and Lt. Garcia-Martinez approached his cell and asked him what he was writing. Id. The plaintiff states that he told them he was writing letters to his family and friends, his lawyer and the media. Id. The plaintiff asserts that he also told Genz and Garcia-Martinez that in all of his outgoing mail, he was including a handwritten newsletter he titled "Harper's Newsletter," which he allegedly described to them as a fictional writing that did not contain any illegal activity or threaten the security or safety of the jail. Id. at ¶10. The plaintiff described the newsletter was a "comical editorial piece that he wr[o]te that criticizes the staff and policy of [the jail]." Id.

The plaintiff alleges that Genz and Garcia-Martinez told him that all outgoing mail must be screened by jail staff, especially if the outgoing mail was

5

about jail conditions or staff. Id. at ¶11. They also allegedly told him that he would be punished for outgoing mail that "criti[c]izes [the jail] or its staff." Id. The plaintiff says that he "then started being argumentative," telling Genz and Garcia-Martinez that this practice was illegal. Id. at ¶12. The plaintiff states that Genz demanded that the plaintiff give her the newsletter. Id. The plaintiff states that he complied with her order. Id.

The plaintiff says that a short time later, Genz told him over his intercom that she would falsify a conduct report against him unless he agreed not to write and mail out any more newsletters. Id. at ¶13. The plaintiff says he refused. Id. The plaintiff says that Genz then wrote a conduct report, falsely stating that the plaintiff had covered his cell window. Id. at ¶14. The plaintiff asserts that on January 24, 2018, defendant correctional officer Johnson held a conduct hearing, found the plaintiff guilty and imposed ten days of cell restriction. Id. at ¶15. The plaintiff says Johnson also told him that he was being punished for the newsletter and he should be careful about what he said about the jail. Id. Johnson allegedly told the plaintiff that inmates are not entitled to First Amendment rights in jail and that he would be punished every time he criticized the jail and staff. Id. The plaintiff asserts that he appealed the decision and that defendants Captain Gabor and Deputy Jail Administrator Wallenhaupt and Jail Administrator Giese allegedly denied his appeal. Id. at ¶16.

The plaintiff says that on January 28, 2018 (a few days after the hearing), he tried to mail a stamped and sealed envelope addressed to his

6

Case 2:20-cv-00875-PP-WED   Filed 12/01/20   Page 6 of 19   Document 12

attorney containing a copy of "Harper's Newsletter Week 2." Id. at ¶17. He says that Gabor intercepted the mail and asked the plaintiff why he was writing about jail conditions. Id. at ¶18. Gabor allegedly told the plaintiff that he would be punished every time and that his outgoing mail would be opened, read and confiscated for criticizing jail staff and conditions. Id. The plaintiff asserts that Gabor then wrote him a conduct report for "printing offensive material about staff" and "disrespect." Id.

The plaintiff explains that Gabor gave him one day cell confinement as a punishment for sending the newsletter to his attorney. Id. at ¶19. He says that she also refused to return the other letter to him, which the plaintiff asserts discussed his pending case. Id. Gabor allegedly said the other letter was evidence. Id. The plaintiff says he appealed the decision to defendant Brenda Greenwald, Giese and Wallenhaupt, but did not receive a response. Id.

The plaintiff says that on February 4, 2018, he tried to mail a sealed, stamped envelope addressed to the ACLU in Washington, D.C., containing a letter criticizing jail conditions. Id. at ¶20. The plaintiff states the envelope also contained "Harper's Newsletter Week 3," which the plaintiff allegedly asked the ACLU to publish on its website. Id. He alleges that defendant Correctional Officer Fudge intercepted and opened the envelope and told the plaintiff not to write to the ACLU. Id. at ¶21. Fudge allegedly told the plaintiff that Greenwald, Gabor, Giese and Wallenhaupt wanted all the plaintiff's outgoing mail opened and read for screening. Id. Fudge then allegedly wrote the plaintiff a conduct

7

report for printing offensive material about staff, "group rebellion" and failure to show respect to staff. Id.

About a week later, on February 10, 2018, defendant Correctional Officer Washington held a hearing and found the plaintiff guilty "based on the text." Id. at ¶22. The plaintiff asserts that Washington revealed to him that Giese and Wallenhaupt wanted the plaintiff punished for any written criticism. Id. The plaintiff asserts that he received ten days of cell restriction which was approved by Gabor. Id. Gabor and Wallenhaupt allegedly denied his appeal. Id. at ¶23.

The plaintiff says that on February 15, 2018, he tried to mail a sealed and stamped envelope addressed to his mother containing a letter and "Harper's Newsletter Weeks 4 and 5 dual edition." Id. at ¶24. The plaintiff asserts that Gabor intercepted the envelope and read the contents. Id. at ¶25. Gabor reiterated to the plaintiff that he was "banned" from criticizing jail conditions in his outgoing mail. Id. She allegedly wrote him a conduct report for "offending jail staff" and "failing to show respect to staff." Id. The plaintiff asserts that Gabor gave him a one-day cell restriction as punishment, and that she did so without any hearing or due process. Id.

The plaintiff asserts that he tried to appeal and grieve the conduct report and the alleged policy, rule or custom that allowed jail staff to open his outgoing mail and punish him for criticizing jail staff and conditions without a hearing. Id. at ¶26. According to the plaintiff, Giese, Wallenhaupt, Gabor and Greenwald upheld the decisions. Id.

8

The plaintiff asserts that on March 18, 2018 (about a month after he tried to mail the last newsletter), he tried to mail "Harper's Newsletter Final edition." Id. at ¶27. The plaintiff asserts that he placed the newsletter and a letter in a sealed and stamped envelope addressed to attorney Jessica Klein (the plaintiff does not say if Klein was representing him at that time). Id. the plaintiff explains that the letter contained detailed information about his upcoming probation revocation hearing. Id.

The plaintiff asserts that Gabor intercepted the envelope and read the contents. Id. at ¶28. She allegedly told him that she did not appreciate him "exposing jail issues" in his letters. Id. The plaintiff asserts that Gabor told him that inmates do not have a right to write negative comments about jail issues. Id. She also allegedly told him that the reason staff was targeting his outgoing mail was because he had written a revealing letter to state senator Lena Taylor, which had exposed the "horrid jail conditions." Id. According to the plaintiff, Gabor said it was her duty, along with Greenwald, Wallenhaupt and Giese, to punish the plaintiff for trying to give the jail and its staff bad publicity. Id. Gabor allegedly wrote the plaintiff a conduct report for "printing offensive materials." Id.

Less than a week later, on March 23, 2018, defendant Correctional Officer Jordan allegedly held a disciplinary hearing on the conduct report and found the plaintiff guilty "based on the text." Id. at ¶29. The plaintiff asserts that Jordan "admitted" to him that Gabor, Greenwald, Giese and Wallenhaupt ordered her to find him guilty. Id. The plaintiff alleges that he was not allowed

9

to produce documents or witnesses at the hearing. Id. Jordan allegedly gave the plaintiff ten days of cell restriction as a punishment for writing the newsletter. Id. The plaintiff explains that he appealed the decision, that Greenwald and Gabor denied the appeal and that Gabor and Wallenhaupt later upheld the appeal. Id. at ¶30.

The plaintiff asserts that on multiple occasions he submitted several grievances, appeals and formal requests challenging staff's practice of opening outgoing mail and disciplining inmates because they criticize jail conditions. Id. at ¶31. The plaintiff asserts that the grievances and appeals either were denied, rerouted, not responded to or that jail staff (he does not say who) told him that he could not grieve the issue. Id. at ¶32. The plaintiff states that he asked the defendants to return to him the confiscated newsletters and letters or allow him to mail them out, but the defendants refused his requests. Id. at ¶33.

The plaintiff says he made all the staff aware that the letters did not discuss criminal activity, contain threats or contain contraband, but he says that the defendants "were intent on persecuting plaintiff even at the expense of violating his rights." Id. at ¶¶34-35. The plaintiff asserts that the defendants indicated to him that staff was opening only his mail and that he was the only inmate being punished for criticizing jail conditions by having his mail blocked. Id. at ¶36.

For relief, the plaintiff seeks $15,000 in compensatory damages, $10,000 in punitive damages and $5,000 in nominal damages from each defendant. Id.

at ¶¶46-48. He also asks the court to overturn the guilty findings and punishments he received. Id. at ¶45.

C. Analysis

The plaintiff asserts multiple legal theories, several of which are clearly meritless. First, the plaintiff's request for injunctive relief asks the court to "overturn" the guilty findings and punishments he received. Because the court cannot turn back time, it cannot reverse the punishments the plaintiff received—the only remedy available to compensate him for any unwarranted punishment is money damages.

Next, the plaintiff says that the defendants' actions violated his rights under Article 01, Sections 01, 03, 04 and 11 of the Wisconsin Constitution. Id. at ¶¶39-43. The state constitution does not authorize suits for money damages except in a limited exception that does apply in this case. Goodvine v. Swiekatowski, 594 F. Supp. 2d 1049 1054 (W.D. Wis. 2009) (citing W.H. Pugh Coal Co. v. State, 157 Wis.2d 620, 634-35 (1990)).

The plaintiff alleges that the defendants violated his rights under the Eighth Amendment of the U.S. Constitution. Dkt. No. 1 at ¶¶39-43. The plaintiff explains that he was a pretrial detainee when he was housed at the jail. Dkt. No. 1 at ¶3. That means his right to be free from conditions that constitute punishment arise under the Fourteenth Amendment, not the Eighth Amendment; the Eight Amendment applies only to convicted prisoners. See Smith v. Dart, 803 F.3d 304, 309 (7th Cir. 2015).

11

The plaintiff asserts that some of the defendants' actions violated his rights under the Fourth Amendment to the U.S. Constitution. Dkt. No. 1 at ¶¶39-40, 43. The Fourth Amendment does protect against warrantless searches and seizures, but "[a] prisoner has no right to privacy with respect to his property[.]" Covington v. Steinert, No. 13-cv-379-wmc, 2014 WL 713102, at *2 (W.D. Wis. Feb. 25, 2014) (citing Hudson v. Palmer, 465 U.S. 517, 530 (1984)).

The plaintiff alleges that he did not receive hearings or was not allowed to present witnesses or documents prior to being punished with cell confinement, and he mentions the Fourteenth Amendment to the U.S. Constitution. Dkt. No. 1 at ¶¶41-42. To "properly plead a due process claim under § 1983, [a plaintiff] must sufficiently allege (1) that [he] had a cognizable liberty interest under the Fourteenth Amendment; (2) that [he] was deprived of that liberty interest; (3) and that the deprivation was without due process." Mann v. Vogel, 707 F.3d 872, 877 (7th Cir. 2013). "Disciplinary measures that do not substantially worsen the conditions of confinement of a lawfully confined person are not actionable under the due process clause[.]" Miller v. Dobier, 634 F.3d 412, 414-15 (7th Cir. 2011).

The plaintiff's allegation that he was punished with a total of just over thirty days of cell confinement does not amount to a deprivation of a constitutional liberty. See, *e.g.*, Marion v. Columbia Corr. Inst., 559 F.3d 693, 697 (7th Cir. 2009) (observing that the U.S. Supreme Court has held that "a prisoner's sentence of thirty days of segregated confinement 'did not present

12

the type of atypical, significant deprivation in which a State might conceivably create a liberty interest'" (quoting Sandin v. Connor, 515 U.S. 472, 486 (1995))).

The plaintiff claims that the defendants told him that staff was opening *only* his mail and that staff was punishing *only* him for criticizing jail conditions, and the plaintiff mentions the "Equal Protection Act." Dkt. No. 1 at ¶39. It appears from this assertion that the plaintiff wants to state a class-of-one equal protection claim under the Fourteenth Amendment to the U.S. Constitution. "To state a class-of-one equal protection claim, an individual must allege that he was 'intentionally treated different from others similarly situated and there is not rational basis for the difference in treatment.'" Swanson v. City of Chetek, 719 F.3d 780, 783 (7th Cir. 2013).

Under Fed. R. Civ. P. 8(a)(2), a plaintiff's complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). A complaint that offers merely a "formulaic recitation of the elements of a cause of action will not do." Ashcroft, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555).

The complaint does not state a class-of-one claim because it does not contain enough factual content to allow the court to draw a reasonable

13

inference that the defendants did what he says they did. The plaintiff's vague allegations that *all* the defendants told him that he was the *only* one whose mail was being opened and that he was the *only* one who was being punished for criticizing jail conditions is not plausible without supporting facts such as who specifically made those statements and when they made those statements. Nor does he identify inmates who were similarly situated to him but who were allowed to mail letters and other documents criticizing the jail or its staff.

The plaintiff alleges "failure to train, negligence, and breach of duty" against Giese, Wallenhaupt, Gabor and Green (all of whom appear to be supervisors). Dkt. No. 1 at ¶43. The plaintiff alleges that the defendant supervisors specifically ordered that the plaintiff's outgoing mail be opened and screened. That is not a "failure to train" claim—it is the opposite. The plaintiff's alleged injuries were caused by the supervisors' subordinates following the training and specific directions the defendant supervisors ordered.

The plaintiff has not stated a claim for intentional infliction of emotional distress under Wisconsin law based on his allegations that defendants read his mail and punished him with cell restrictions for complaining about jail conditions. To prevail on such a claim, the plaintiff would have to show that the defendants' "conduct was so extreme and outrageous that an average member of the community would find [their] behavior a complete denial of [the plaintiff's] dignity as a person." Howard v. Koeller, 756 F. App'x 601, 606 (7th Cir. 2018). Even if the plaintiff proves every allegation in his complaint, no reasonable jury could conclude that jail staff reading a prisoner's mail (which

14

they are permitted to do under the Fourth Amendment) or confining a prisoner to his cell for a handful of days at a time denies a prisoner of his "dignity as a person."

The court will allow the plaintiff to proceed on a First Amendment claim based on his allegations that each defendant acted (either by censoring his outgoing mail and/or by punishing him for the contents of his outgoing mail) to prevent the plaintiff from complaining about jail staff and conditions. "[C]ensorship of an inmate's outgoing mail still is scrutinized under the standard espoused in [Procunier v.] Martinez, 416 U.S. [396] at 413 [(1974)]." Koutnik v. Brown, 456 F.3d 777, 784 (7th Cir. 2006). Under that standard, "the regulation or practice in question must further an important or substantial governmental interest unrelated to the suppression of expression" and "the challenged action 'must be no greater than is necessary or essential to the protection' of that interest." Id. Development of the record will determine whether there was a legitimate governmental interest at stake and whether prohibiting the plaintiff from writing negatively about jail staff and conditions "was no greater an infringement upon [his] first amendment liberties than [was] necessary to protect the state's interest." Id. at 784-85. For now, the plaintiff has alleged sufficient facts to state a First Amendment claim against the defendants.

The plaintiff also has stated a claim against Gabor and Fudge that they intercepted and confiscated outgoing legal mail that contained information about his pending criminal cases. As the Seventh Circuit explained in

15

Guajardo-Palma v. Martinson, "[a] practice of prison officials reading mail between a prisoner and his lawyer in a criminal case would raise serious issues under the Sixth Amendment (and its application, by interpretation of the Fourteenth Amendment, to state criminal defendants), which guarantees a right to counsel in criminal cases." 622 F.3d 801, 803 (2010). The plaintiff may also proceed against Greenwald, Wallenhaupt, Gabor and Giese under this theory based on his allegations that they ordered staff to open and screen all his outgoing legal mail.

The plaintiff has stated a First Amendment retaliation claim against Genz based on his allegations that she fabricated a conduct report because he refused to stop complaining about jail conditions. And he has stated a retaliation claim against Greenwald, Wallenhaupt, Gabor and Giese based on his allegations that they ordered all the plaintiff's outgoing mail to be opened and screened because he complained to a state senator about the jail's conditions. See Gomez v. Randle, 680 F.3d 859, 866 (7th Cir. 2012) (citations omitted) (To state a First Amendment retaliation claim, a plaintiff must allege that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was 'at least a motivating factor' in the [d]efendants' decision to take the retaliatory action.").

### III. Conclusion

The court **GRANTS** the plaintiff's motion to waive the initial partial filing fee. Dkt. No. 10.

16

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 6.

The court **DENIES** the plaintiff's first motion to proceed without prepaying the filing fee because it did not relate to the six-month period prior to the date on which he filed his complaint. Dkt. No. 2.

The court **DENIES** as moot the plaintiff's third motion to proceed without prepaying the filing fee. Dkt. No. 9.

The court **ORDERS** the U.S. Marshals Service to serve a copy of the complaint and this order on defendants Michael Giese, Angela Wallenhaupt, Lt. Garcia-Martinez, Lt. Nicole Genz, CO Fudge, CO Washington, CO Johnson, CO Jordan, Capt. Karla Gabor and Brenda Greenwald under Federal Rule of Civil Procedure 4. Congress requires the U.S. Marshals Service to charge for making or attempting such service. 28 U.S.C. §1921(a). Although Congress requires the court to order service by the U.S. Marshals Service, it has not made any provision for either the court or the U.S. Marshals Service to waive these fees. The current fee for waiver-of-service packages is $8.00 per item mailed. The full fee schedule is provided at 28 C.F.R. §§0.114(a)(2), (a)(3). The U.S. Marshals Service will give the plaintiff information on how to remit payment. The court is not involved in collection of the fee.

The court **ORDERS** the defendants to file a responsive pleading to the complaint.

The court **ORDERS** that the agency that has custody of the plaintiff shall collect from his institution trust account the $350 filing fee by collecting

17

Case 2:20-cv-00875-PP-WED   Filed 12/01/20   Page 17 of 19   Document 12

monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the clerk of court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency shall clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution shall forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the officer in charge of the agency where the plaintiff is confined.

The court will issue a separate order **REFERRING** this case to Magistrate Judge William E. Duffin for pretrial proceedings.

The court **ORDERS** that the parties may not begin discovery until after the court enters a scheduling order setting deadlines for completing discovery and filing dispositive motions.

The court **ORDERS** that plaintiffs who are inmates at Prisoner E-Filing Program institutions must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are inmates at all other prison facilities must submit the original document for each filing to the court to the following address:

>Office of the Clerk
>United States District Court
>Eastern District of Wisconsin
>362 United States Courthouse
>517 E. Wisconsin Avenue
>Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the clerk of court of any change of address. The court also advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court advised of his address may result in the court dismissing this case without further notice.

The court will include a guide prepared by court staff to address common questions that arise in cases filed by prisoners. Entitled "Answers to Prisoner Litigants' Common Questions," this guide contains information that the plaintiff may find useful in prosecuting his case.

Dated in Milwaukee, Wisconsin, this 1st day of December, 2020.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**

19

Case 2:20-cv-00875-PP-WED   Filed 12/01/20   Page 19 of 19   Document 12